137 N.J. Super. 124 (1975)
348 A.2d 202
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WALTER LONG, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1975.
Decided November 13, 1975.
*127 Before Judges LYNCH, ACKERMAN and LARNER.
Ms. Susan Slovak, Asst. Deputy Public Defender, argued for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. James K. Smith, Jr., Assistant Deputy Public Defender, of counsel).
Ms. Jane E. Deaterly, Deputy Attorney General, argued for respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
Defendant was convicted on both counts of an indictment charging him with possession of a controlled dangerous substance (N.J.S.A. 24:21-20(a)(1)) and distribution of same (N.J.S.A. 24:21-19(a) (1)). The trial judge imposed an 18-month sentence to the Mercer County Correction Center on each count, suspended execution of the same, and imposed a probation term and a fine of $500.
The major issue on this appeal is whether the trial judge committed reversible error in his refusal to pose certain questions to prospective jurors on the voir dire. The asserted purpose of the supplemental questions framed by defendant's *128 counsel was to elicit possible racial prejudice because defendant was black and the State's major witness, an undercover agent, was white.
The trial judge examined the jurors on voir dire in accordance with R. 1:8-3 and State v. Manley, 54 N.J. 259 (1969). During this process he stressed to the panel that the purpose of the voir dire was to "get a jury that has no predispositions, have no prejudices, either against the person of the defendant himself whom you see in this courtroom or because of the nature of the charge," in order to achieve a verdict based upon the evidence and "not because of any passion, prejudice, or sympathy."
Counsel for defendant requested the judge to supplement his inquiry by asking the jurors the following questions:
Would any among you give more credence to testimony of a white person than you would the testimony of a black person?
Would you give the testimony of a police officer more credence, more reliability than you would that of a black person?
The judge denied the request, stating that he had substantially covered the principles involved in the case and was not called upon to adopt the form of the questions submitted by counsel.

I
The thrust of the appellate argument is that the judge's failure to pose the questions as framed or in another form specifically attuned to ferret out possible racial prejudice was a violation of defendant's right to due process under the Fourteenth Amendment in view of the United States Supreme Court's opinion in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). Alternatively, he argues that the judge's refusal to question the jurors as requested was an abuse of discretion constituting reversible error. These contentions bring into focus the scope and application of the Supreme Court's opinion in Ham v. South Carolina.
*129 Preliminarily, we observe that in the absence of a request a judge is not required on his own motion to pose questions on a voir dire relating to any specific type of prejudice, racial or otherwise, merely because a party may be black, white, yellow or red, or because he may possess any physical idiosyncrasy. The mere fact that the problem is highlighted by a judge's question may be counter-productive and inject rather than remove racial prejudice in a case where a defendant is other than white or may have physical characteristics which are different or unusual.
In Ham, supra, the Supreme Court was faced with the refusal of a state trial judge to interrogate jurors specifically as to their potential prejudice against blacks. Justice Rehnquist, writing for a unanimous court on this issue, overturned a conviction on the basis that the refusal of the trial judge to undertake a voir dire inquiry as to possible racial prejudice constituted, under the facts in that case, a violalation of the constitutional guarantee of due process contained in the Fourteenth Amendment.
Defendant herein takes the position that Ham mandates a reversal on constitutional grounds merely because of the fact that he is black. In support of this position he cites United States v. Robinson, 485 F.2d 1157 (3 Cir.1973); United States v. Booker, 480 F.2d 1310 (7 Cir.1973); Cochran v. State, 505 S.W.2d 520 (Ark. Sup. Ct. 1974); McNichols v. State, 279 So.2d 377 (Fla. D. Ct. App. 1973); Reid v. State, 129 Ga. App. 657, 200 S.E.2d 454 (App. Ct. 1973); People v. Williams, 41 A.D.2d 611, 340 N.Y.S.2d 504 (App. Div. 1973); People v. Wray, 49 Mich. App. 344, 212 N.W.2d 78 (App. Ct. 1973).
The jurisdictions represented by the foregoing cases have indulged in a broad interpretation of Ham as setting down a constitutional imperative that a court must make specific inquiry as to racial prejudice when requested, in every routine black defendant case regardless of the absence of special racial overtones.
*130 To the contrary, Massachusetts and the Ninth Circuit Court of Appeals have limited the mandatory effect of Ham to a case where facts exist which demonstrate racial overtones or potential prejudice. United States v. Walker, 491 F.2d 236 (9 Cir.), cert. den. sub nom. Walker v. United States, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768 (1974); Commonwealth v. Pinckney, Mass., 309 N.E.2d 495 (Sup. Jud. Ct. 1974); Commonwealth v. Ryles, Mass., 296 N.E.2d 816 (Sup. Jud. Ct. 1973), cert. den. sub nom. Ryles v. Massachusetts, 414 U.S. 980, 94 S.Ct. 301, 38 L.Ed.2d 224 (1973); Commonwealth v. Bumpus, Mass., 309 N.E.2d 491 (Sup. Jud. Ct. 1974); Commonwealth v. Ross, Mass., 296 N.E.2d 810 (Sup. Jud. Ct. 1973), cert. den. sub nom. Ross v. Massachusetts, 414 U.S. 1080, 94 S.Ct. 599, 38 L.Ed.2d 486 (1973).[1]
The impact of Ham on New Jersey practice has not been considered in any reported opinion to date.
*131 A perusal of Justice Rehnquist's opinion in Ham leads us to conclude that it was intended to be limited as imperative constitutional doctrine to cases involving special circumstances pointing to the presence of racial overtones or prejudices. The opinion points up that defendant was a young negro who was "well known locally for his work in such civil rights activities as the Southern Christian Leadership Conference and the Bi-Racial Committee of the City of Florence. * * * His basic defense at the trial was that law enforcement officers were out to get him because of his civil rights activities, and that he had been framed on the drug charge." Ham v. South Carolina, supra, 409 U.S. at 525, 93 S.Ct. at 849, 35 L.Ed.2d at 49.
In our opinion, the Ham case does not have the broad impact urged by defendant. The fact that a defendant is black does not in itself demand that a judge must accede to a request to submit specific questions on racial prejudice to prospective jurors. As a corollary, the failure to make such inquiry in the normal case, absent other factors, does not constitute a violation of due process so as to mandate a reversal because of such failure.
We now turn to the alternative argument that the failure to question the jurors constituted an abuse of discretion. Where a defendant does request a voir dire inquiry as to potential prejudice because of color or other physical characteristics, it is better practice for a judge to accede to the request and pose simple and direct questions pointed to the specific element of prejudice involved. However, a judge's refusal to interrogate jurors on a particular form of prejudice does not necessarily constitute an abuse of discretion reaching the level of reversible error. State v. Kelly, 118 N.J. Super. 38 (App. Div.), certif. den. 60 N.J. 350 (1972). It depends on the factual underpinning of the case itself, the characteristics of the principals involved in the crime, and a realistic assessment of the prejudice potential which may be introduced thereby. See Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *132 United States v. Robinson, 466 F.2d 780, 782 (7 Cir.1972) (federal court practice).
The questions requested by defendant herein could have been rejected purely because of their inappropriate content. They did not zero in on the intended purpose of eliciting racial prejudice. It would be futile to ask a juror whether he would give more credence to testimony of a white person than a black person when he has not seen the witness or heard his testimony. A response would be meaningless unless the question included the additional caveat "solely because he was black." The other question referable to the comparison of the testimony of a police officer and that of a black person is equally deficient.
Even if we attribute some substantive suggestion contained in these questions which would invite the judge to formulate his own questions on the subject of racial prejudice, nevertheless his failure to pose them cannot lead to a reversal of the conviction.
Defendant was charged with making a sale of a controlled dangerous substance to a police officer who was acting as an undercover agent. Defendant was black and the police officer was white. Otherwise, there were no racial overtones in the background of defendant, the nature of the crime, the milieu of the community, or in any pretrial publicity which would warrant the judge or the parties to anticipate realistically any possible racial prejudice on the part of prospective jurors.
Under such circumstances the decision of a judge whether to question jurors on possible racial prejudice after a proper request is made rests within his discretion, and his refusal to do so does not constitute error. We do not ascribe to the position taken by defendant that the mere fact that an accused is black requires a judge to undertake the inquiry as to racial prejudice so long as he is requested to do so. There must be something more in the case by way of facts of potential prejudice for a judge's refusal to question jurors on the subject to be denominated as an abuse of discretion.
*133 As we have noted, the better practice is to make the requested inquiry. In the absence of special facts of racial overtones the grant or denial of the request is within the discretion of the trial judge and will not be disturbed on appeal. In the event that the judge has some doubt about the propriety of such an inquiry, he should question counsel as to any special factors in the case or the background of the parties or witnesses which would establish a potential for the improper intrusion of racial prejudice. If such factors do exist a judge is required as a constitutional mandate to question the jurors specifically as to possible racial prejudice. Failure to do so under such circumstances would constitute reversible error.
In view of the absence of special features of racial overtones in this case, the determination of the trial judge is sustained.

II
In response to a question on direct examination as to the purpose in going to 403 North Montgomery Street (where defendant made the sale and was arrested), Officer Tumillo testified: "The purpose was prior to this time a confidential informant of mine had told me that the people at that address were selling cocaine." Defense counsel raised no objection and now asserts plain error, urging that this response of the witness constituted prejudicial hearsay and violated his Sixth Amendment right to confrontation of witnesses.
Hearsay is defined as "[e]vidence of a statement offered to prove the truth of the matter stated which is made other than by a witness while testifying at the hearing. * * *" Evid. R. 63. This rule is not violated when "a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so `upon information received.'" State v. Bankston, 63 N.J. 263, 268 (1972). Such evidence is not admitted to establish the truth of the information received by the officer but rather to explain the *134 reason for his approaching the scene and his subsequent conduct. Ibid.
Where, however, the information as related to the jury directly or by necessary inference points to the guilt of the defendant, the testimony is inadmissible. Bankston, supra, 63 N.J. at 271; State v. Niesbbalski, 82 N.J.L. 177 (Sup. Ct. 1912).
The response of Officer Tumillo in this case did not directly or by necessary inference implicate defendant. The information to which he testified only dealt in general terms with the address where "people * * * were selling cocaine." Furthermore, the prosecutor made no further reference to the testimony in summation or otherwise in any effort to urge an inculpatory inference therefrom.
In view of the absence of objection we do not consider that this incidental reference by the witness was of sufficient importance in the totality of the trial as to have had a clear capacity to bring about an unjust result. Manifestly, the inclusion of the objectionable material does not qualify as plain error. R. 2:10-2; State v. Macon, 57 N.J. 325 (1971).

III
We have considered defendant's other appellate arguments relating to the admission of the laboratory report and the merger of the crimes of possession and distribution and find them to be without merit. As to the former issue, see State v. Brown, 99 N.J. Super. 22 (App. Div.), certif. den. 51 N.J. 468 (1968); as to the latter, see State v. Davis, 68 N.J. 69 (1975).
Judgment is affirmed.
NOTES
[1] Commonwealth v. Ross was decided after a remand by the United States Supreme Court to reconsider the viability of defendant's conviction in light of the decision in Ham v. South Carolina. After the Supreme Judicial Court of Massachusetts sustained the conviction on the remand on its limiting interpretation of Ham, application was again made to the Supreme Court for a writ of certiorari. The petition was denied, with a dissent which vigorously attacked the validity of the limited interpretation which the Massachusetts court placed on the Ham opinion. Although a denial of certiorari has no precedential effect, Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950), contra concurring opinion of Justice Jackson in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952), in this instance the silence of the majority in the face of the strong dissent may indicate to some degree a satisfaction with the Massachusetts application of the Ham rule.

However, it should be noted that in the subsequent history of the Ross case the First Circuit Court of Appeals sustained the grant of a writ of habeas corpus without resolving the ambiguity of Ham, and based its conclusion on the potential of racial prejudice from the fact that the accused was black and the charge involved violence against a white victim. Ross v. Ristaino, 508 F.2d 754, 760 (1 Cir.1974).