219 N.J. Super. 290 (1987)
530 A.2d 338
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID BOWENS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 15, 1987.
Decided July 21, 1987.
*292 Before Judges KING, DEIGHAN and MUIR.
Barbara J. Lieberman, Designated Counsel, attorney for appellant (Alfred A. Slocum, Public Defender of New Jersey, attorney for appellant).
Mary Ellen Halloran, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, P.J.A.D.
Defendant appeals from his conviction for first-degree aggravated sexual assault. N.J.S.A. 2C:14-2a. He was sentenced to *293 18 years in State Prison with an eight-year parole disqualifier. We conclude that certain trial errors were sufficient to undermine our confidence in the verdict and reverse.
These are the facts upon which the conviction was obtained. In February 1982 five-year-old K.S. lived with her grandmother, Nether Broxton, in a house on Peshine Avenue in Newark. Defendant David Bowens, K.S.' father, lived in the basement of the house. K.S. testified that once, while her grandmother was sleeping, her father inserted his finger into her vagina and told her not to tell anyone. She also testified that her uncle, Charles Broxton, had inserted his penis into her. K.S. contradictorily testified both that the assault by Charles happened at the same time and at a different time than David Bowens assault. She could not recall in what room the assault occurred nor whether it was during the day or night. Soon after these assaults K.S. contracted gonorrhea and her grandmother took her to the emergency room of Children's Hospital of Newark where doctors concluded that she had been sexually abused. That same day Nether Broxton filed a complaint alleging abuse of K.S. by both David Bowens and Charles Broxton.
David Bowens claimed that he did not commit any assault. He introduced witnesses to raise the possibility that Curtis Price, Nether Broxton's male friend, had actually committed the assault and that Nether Broxton had filed the present complaint because of malice towards defendant David Bowens and fear of Curtis Price. Both defendant's sister Regina Bowens and his aunt Maryann Broxton testified that during February or March 1982 Nether Broxton had contracted gonorrhea from Curtis Price. Maryann Broxton also testified that during a dispute in April 1982 between Nether Broxton and David Bowens over money, Nether Broxton threatened to have David "locked up." Neither Curtis Price nor Nether Broxton testified at trial.
As noted, defendant was convicted of first-degree aggravated sexual assault and sentenced to 18 years in State Prison with an eight-year parole disqualifier.

*294 I
On the first day of trial in this case the prosecution moved to change the indictment from alleging that the crime took place "on or about the 15th of February, 1982" to alleging that it occurred "sometime during the month of February, 1982." Defendant not only made no objection to this change at the time but defense counsel assisted the court in picking the proper language to use in the amendment. Defendant now claims that he did not have proper notice of the time of the offense as required by State in the Interest of K.A.W., 104 N.J. 112 (1986). Not only is his claim legally insufficient, it was waived through his failure to object and his counsel's assistance in the amendment process. R. 3:10-2.
The specific day of this particular assault is not critical since defendant never alleged that he was not in the vicinity at the time of the incident. He had alleged that Nether Broxton and Curtis Price were the likely perpetrators. K.A.W. dealt with a trial court's reaction to a motion to dismiss on the same grounds which defendant alleges here. The trial judge should not have the obligation of realizing that defendant had a valid K.A.W.-based objection to an amendment of the indictment where defense counsel unequivocally stated that he had no objection and then proceeds to suggest the appropriate language which should be in the amended indictment.

II
The cornerstone of David Bowens' defense was that Nether Broxton and her boyfriend Curtis Price actually committed the assault upon K.S. The judge permitted defendant to attempt to establish through Regina Bowens, defendant's sister, that Nether Broxton, Curtis Price and K.S. all had venereal disease after the assault. The following dialogue took place a few moments later in her testimony:
Q. Miss Bowens, to your knowledge how did Nether Broxton feel about Curtis Price? Please don't tell us about any conversation that she had, but to your knowledge how did she feel about him?

*295 A. She was afraid of him.
Q. And do you know why she was afraid of him?
A. He used to beat her all the time and he also had killed his niece, raped his niece and child.
MR. LAURINO [the prosecutor]: Objection, Judge, objection, Judge.
The point of this testimony was to establish that Nether Broxton's fear of Curtis Price was so strong that, even if he had committed the assault against K.S., Nether Broxton would try to pin it on David Bowens rather than accuse Curtis Price and later have to face his wrath.[1] The judge conducted an Evid. R. 8 hearing at the prosecutor's request and cut short this line of questioning, instructing the jury, "Members of the jury, I instruct you that any testimony given by the present witness [Regina] concerning alleged crimes that may have been committed by Mr. Price is to be disregarded by you and are not to play any part in your consideration of the defendant's guilt or innocence in this matter." The judge's exclusionary ruling was based upon Evid. R. 4; he felt that even if the evidence "does have some probative value, its impact maybe creates some substantial prejudice to the State." Defendant asserts that this ruling was error. We agree with his contention at least as it applies to the testimony concerning Curtis Price beating Nether Broxton.
*296 Defendant's argument is different depending on which conduct of Curtis is considered. First, as to the testimony concerning the alleged rape and murder, defendant argues that Curtis' original admission of the crimes to Nether Broxton was an admission against his interest, Evid. R. 63(10), and, second, he asserts that the statement from Nether Broxton to Regina Bowens would be admissible with an instruction limiting its use to establishing Nether Broxton's state of mind, i.e., her fear of Curtis Price because of his violent acts. Evid. R. 63(12). This argument has appeal except for one problem  no evidence was ever introduced that Curtis Price was the person who made the original statement that he had murdered or raped anyone. It was assumed by both the prosecutor and defense attorney that in fact Curtis was the original declarant but, without some evidence to this effect, we will not reverse on this ground since, if Curtis was not the original declarant, this was clearly inadmissible hearsay.
However, the statements from Nether Broxton to Regina Bowens concerning the beatings which Curtis Price gave to Nether Broxton should have been admitted for the limited purpose of establishing her fear of Curtis. Evid. R. 63(12). This admissible statement tied in with Regina's first-hand observations of the welts and bruises on Nether Broxton's body which resulted from the beatings. This could have been easily admitted with a limiting instruction that the use of the evidence was only to establish Nether's state-of-mind, not to violate Evid. R. 47 through an assumption that since Curtis Price did something bad in the past he therefore also must be the real culprit here. Under Evid. R. 4, to exclude this evidence the probative value (which is clearly high here since David Bowens' main defense is "Nether and Curtis did it and stuck it on me because Nether was afraid to admit the truth"), must be "substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice or of confusing the *297 issues or of misleading the jury." Evid. R. 4. Of course, the prejudicial value may be high but so is the relevance. Damaging evidence usually is very prejudicial but the question here is whether the risk of undue prejudice was too high. The risk of prejudice is not undue in this case because the testimony concerning Nether's state-of-mind was a substantial aspect of David Bowens' main theory of defense. Although this is a discretionary ruling by the trial judge, his ruling was a mistaken exercise of discretion which substantially harmed Bowens' defense effort. The testimony concerning the beatings of Nether Broxton should have been admitted, but the judge cut short the line of questioning before it could be offered as evidence. However, the testimony concerning the alleged rape and murder was properly excluded, albeit for the wrong reason (Evid. R. 4 instead of Evid. R. 47), since solid evidence that Curtis was the original declarant of the rape and murder statement against his interest was never presented. We conclude that the testimony of the claimed beatings was admissible. This testimony was crucial to establish Nether Broxton's state-of-mind. If the defense properly establishes on retrial that Curtis Price was the original declarant of the rape and murder admission, that evidence could also be admissible for the same purpose of the testimony about the beatings. See generally Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (hearsay declarations against interest admissible in criminal trial).

III
While Officer Alamo was testifying on direct examination for the State, the following colloquy took place:
Q. Now, you became involved in the investigation of a reported sexual abuse of one K.S. is that right, sir?
A. That's correct.

*298 Q. And can you tell us when you became involved in that investigation, sir?
A. The 29th of April, 1982.
Q. Now, you were working on this case with what other detective?
A. Detective Padilla and also another detective that's no longer on the job. I believe later on he picked up the investigation, I'm not sure.
Q. And as far as Detective Padilla is concerned, do you know his whereabouts right now, sir?
A. In the hospital.
Q. Okay.
A. Now, you became involved you indicated on the 29th, okay. Now, was that the date of the initial report, sir, or is that sometimes afterwards?
A. The initial report was made up on April 25, I received the investigation on April 29, 1982.
Q. Now, with respect to one David Bowens, did you take up the investigation of one David Bowens, sir?

A. Yes.

Q. And that was for an incident of reported abuse at what month, sir?

A. During the month of February.

Q. Of 
A. Of 1982. [Emphasis added].
Defendant made no objection at the time to these remarks.
Also, Dr. John Alexander, when testifying on direct for the State responded that some of his "findings" on this case were that "the child [K.S.] told the grandmother [Nether Broxton] that her father and her cousin quote stuck his thing in her. The grandmother states that the incident had occurred several weeks prior when the child's father ..." At this point defense counsel objected on hearsay grounds and asked that the doctor limit his testimony "to what was necessary for the treatment of this particular child." The judge sustained the objection but gave no limiting instruction to the jury. Evid. R. 6. Defendant now asserts that the fact that the jury heard both these statements without the right to cross-examine the declarant violated his Sixth Amendment right of confrontation. We agree as to the police officer's testimony which clearly violated the Supreme Court's holding in State v. Bankston, 63 N.J. 263 (1973).
The Bankston Court wrote,

*299 It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so "upon information received." Such testimony has been held to be admissible to show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct. However, when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused the testimony violates the hearsay rule. Moreover, the admission of such testimony violates the accused's Sixth Amendment right to be confronted by witnesses against him. [Id. at 268-269; emphasis added].
Clearly, the officer's testimony in this case falls into the latter category. Alamo specifically referred to Bowens and the time of the offense rather than stopping his recitation once he had informed the judge that he had been investigating K.S.' allegations. The State cites State v. Long, 137 N.J. Super. 124 (App.Div. 1975), to bolster its claim that this testimony was simply offered to explain the officer's "reason for his approaching the scene and his subsequent conduct." But the facts in Long were completely different from this case. There the officer's testimony was that "a confidential informant of mine had told me that people at that address were selling cocaine." (emphasis added). Id. at 133. No mention of the particular defendant was made. We there wrote, "The response of Officer Tumillo in this case did not directly or by necessary inference implicate defendant. This information to which he testified only dealt in general terms with the address where `people ... were selling cocaine'." Id. at 134. On the other hand, Alamo directly mentioned defendant as the target of his investigation, thereby necessarily implying that Nether Broxton had told him of defendant's involvement in the assault. As we stated in State v. Thomas, 168 N.J. Super. 10, 15 (App.Div. 1979), when dealing with this same issue, "The inescapable inference from Reeds' [the police officer's] testimony is that an informer had given him the defendant's name. As a result, the jury was led to believe that an unidentified informer, who was not present in court and not subjected to cross-examination, had told Reed that defendant committed a crime." The only difference *300 here is that the informant, Nether Broxton, was identified by name by the officer.
There is also no merit to the State's claim that even if there was error, the error was not "plain" and, thus, reversal should not occur absent an objection to the testimony at trial by the defendant. Of course, it would be tidier if defense counsel had objected but the fact remains that the prosecutor should have refrained from so clearly inviting a violation of defendant's Sixth Amendment right of confrontation.
In regard to the alleged improper comments by the doctor, the judge properly sustained the objection to that testimony. State in the Interest of C.A., 201 N.J. Super. 28, 33-34 (App.Div. 1985). Evid. R. 63(12), which the State cites to justify admission of this evidence, even though stricken, does not allow testimony which is irrelevant to the treatment of the patient to be admitted simply because it is "attached" to a statement which does pertain to treatment. The remark about defendant's involvement could have been easily separated from the general tale of the assault which K.S. gave the doctor so that the jury would not hear this inadmissible evidence.
What is more disturbing is the prosecutor's later comment on the inadmissible part of the doctor's statement which made it appear that the jury could consider the judicially-excluded testimony. The prosecutor remarked
[T]hroughout, she maintained that it was her father that abused her and that it was her cousin, Charles Broxton, who abused her. She maintained that throughout and it just wasn't during the course of this trial. She stated it way back when the police did an interview of her. She stated [it] way back when she went to the hospital. And you'll have the opportunity to review the hospital records and you will see a paragraph there in particular, which indicates the child continually verbalizes that the father had placed his finger on her."
This case is similar to State v. Manning, 82 N.J. 417 (1980), where a hearsay statement linking defendant to the crime was held to be constitutional error despite a very strong curative instruction. Justice Sullivan spoke for the Court saying

*301 The State argues that Detective Dilkes' comment to defendant was necessary to give meaning to defendant's response. It submits that the comment was not admitted for its truth and that the jury was promptly and emphatically instructed that it was to be used solely as background for defendant's response and not as proof that the juvenile had in fact implicated defendant in the robbery.
Although the comment was admitted for a limited purpose and the jury was promptly and emphatically so instructed, we conclude that the potential for prejudice was devastating. The State's burden was to connect defendant with the juvenile and the robbery. It could not call the juvenile as a witness as he had recanted at a Williams hearing and testified that defendant had nothing to do with the robbery or the juvenile being at the scene. However, through the mechanism of Detective Dilkes' comment, the State was able to have the jury told that the juvenile had implicated defendant in the robbery. Despite the court's admonition to the jury as to the limited purpose and effect of the comment, it is difficult to see how the jury would not give such a crucial statement some probative effect. State v. Bankston, 63 N.J. 263 (1973). If the comment had been admitted as substantive proof, it would undoubtedly have been highly prejudicial hearsay, would have denied defendant a right of confrontation and would have constituted reversible error. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); State v. Young, 46 N.J. 152 (1965). The State's attempt to draw a line of demarcation is too tenuous where as here a defendant's constitutional rights are involved. The comment should have been excluded under Evid. R. 4.
The detective could simply have been asked what defendant's response was when advised that he was being charged with armed robbery. There was no need to have the jury told that defendant had been implicated in the robbery by the juvenile.
We view the evidentiary error here of similar magnitude, especially since Nether Broxton never testified and was never cross-examined.

IV
The prosecutor made several comments which the defendant asserts were so improper as to require reversal of his conviction. First, defendant cites to the prosecutorial comments to which his counsel failed to object: the remark asserting that the reason why Nether Broxton failed to appear in court was that she could not bear to testify against her son, references to the alleged criminal actions and flight of Charles Broxton and references to the hearsay statements which were made by Officer Alamo and Dr. Alexander. Second, he cites to *302 comments to which he did make proper objections: the "hint" that defendant likes sex with young girls  "That means that defendant got this child [K.S.' mother] pregnant around 14. Isn't that interesting?" and the prosecutor's remark that "We're dealing with hidden acts. We're dealing with private acts done in a bedroom, done in an alleyway. So we're left with really only two people that have intimate knowledge of what happened, the victim and the assailant," which defendant feels was an improper comment on his failure to testify. Objections to both these statements were sustained but the judge did not give any curative instructions; this defendant also asserts as error. We agree with defendant at least as to the comments on the hearsay testimony of the police officer and doctor and the remark that only defendant and K.S. had personal knowledge of the incident. These improprieties on summations when coupled with the previously noted cumulative evidentiary errors compel a new trial.
The remarks about the hearsay statements were completely improper, especially regarding Dr. Anderson's testimony. The prosecutor made it appear that the previously-excluded "medical testimony," which implicated defendant as the perpetrator of the assault, was admissible after all when, in fact, the judge had instructed the prosecutor to limit the testimony to the proper bounds of Evid. R. 63(12).
Equally improper was the prosecutor's previously-quoted comment which impinged on defendant's right to refuse to testify. Although the defendant never requested a jury instruction after his objection to this remark was sustained, we conclude that it was plain error on the part of the judge not to say anything to the jury to reinforce its duty to respect defendant's right to refuse to testify without anynegative inferences. In State v. McLaughlin, 93 N.J. Super. 435 (App.Div. 1967), we refused to reverse a conviction in a similar instance but only because "[t]he judge handled the matter forcefully the instant it arose, in a manner which made it plain to the jury that the comment was to be eradicated from their minds and not employed *303 by them in any respect." Id. at 440-441. Here the judge made no such effort. He simply told the prosecutor at side bar, "Just stay away from that. I think you should stay away from the defendant's case." State v. Dent, 51 N.J. 428 (1968), dealt with a similar comment by the trial judge who said, "One of the things you may consider in weighing the truth of the evidence produced for the State is the absence of any witness for the defendants to say that ... they were somewhere else asleep or doing something like that. You may consider that." Id. at 439. The Court reversed defendant's conviction despite the trial judge's later attempt to preserve the defendant's right not to testify with a standard instruction that such a refusal should not be held against him. The Court said "Unless it appears that there are witnesses other than the defendant available to contradict or deny evidence inculpating him, a comment of this type made here ... points to the only person who could have offered the denial, i.e., the defendant himself." Id. at 440.
Because of the noted errors a new trial is required here. We believe that the words of Justice Jacobs in State v. Orecchio, 16 N.J. 125, 129 (1954), are pertinent.
The sound administration of criminal justice in our democracy requires that both the end and the means be just. The accused, no matter how abhorrent the offense charged nor how seemingly evident the guilt, is entitled to a fair trial surrounded by the substantive and procedural safeguards which have stood for centuries as bulwarks of liberty in English speaking countries. This, of course, does not mean that the incidental legal errors, which creep into the trial but do not prejudice the rights of the accused or make the proceedings unfair, may be invoked to upset an otherwise valid conviction; under these circumstances it would be grossly unjust to the State and its people to grant a new trial, and in recent days this court has not hesitated to deny such relief to the defendant. See State v. LeFante, 14 N.J. 584 (1954); State v. Witte, 13 N.J. 598 (1953), certiorari denied 347 U.S. 657, [951], 74 S.Ct. 675; State v. Vaszorich, 13 N.J. 99 (1953), certiorari denied 346 U.S. 900, 74 S.Ct. 219, 98 L.Ed. 400 (1953). But cf. Knowlton, Criminal Law and Procedure, 9 Rutgers L. Rev. 78, 87 (1950). Where, however, the legal errors are of such magnitude as to prejudice the defendant's rights or, in their aggregate have rendered the trial unfair, our fundamental constitutional concepts dictate the granting of a new trial before an impartial jury.
Reversed and remanded for a new trial.
NOTES
[1] The following testimony from the Rule 8 hearing reveals Regina Bowens' source of knowledge about Nether Broxton's state of mind

She always would call me on the phone and tell me that he had beaten her, which was very often.
Q. Now, on this particular occasion when you went to her house, you said that you observed some bruises on her?
A. Yes.
Q. And on the other occasions when she called did you go over to her house?
A. Yes, I did.
Thus, Regina Bowens first learned of the alleged beatings through Nether Broxton's statements and then saw the bruises. This rules out any possibility of this testimony being admitted as a lay opinion via Evid. R. 19 and Evid. R. 56(1) since the statements, not the bruises, alone led Regina to believe that Curtis Price had beaten Nether Broxton.