266 N.J. Super. 415 (1993)
629 A.2d 1367
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WENDELL L. HORCEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 14, 1993.
Decided July 30, 1993.
*416 Before Judges SHEBELL, ARNOLD M. STEIN and CONLEY.
Zulima V. Farber, Public Defender, attorney for appellant (Roy B. Greenman, Designated Counsel, on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Larry R. Etzweiler, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the Court was delivered by ARNOLD M. STEIN, J.A.D.
*417 Defendant, an African-American male, described in the record as larger than the Caucasian female victim, was convicted of second degree robbery as a lesser included offense of first degree armed robbery. We reverse because the trial judge refused to question prospective jurors about whether the racial disparity between the victim and the accused could affect their ability to be impartial.
The robbery occurred at a Fotomat booth in the parking area of a shopping mall. According to the victim, her assailant reached into the booth, grabbed her by the collar, pushed her against the wall, shoved a long, sharp, shiny object into her ribs and demanded money. The victim telephoned the police shortly after the robber fled with the money, which totaled about $115.
Defendant was stopped by the police about one mile from the Fotomat. The car he was driving, the clothes he was wearing and his physical description were similar to those previously provided by the victim, who identified defendant as the robber shortly after he was apprehended. The police found $116.66 crumpled up in his left front hip pocket. No knife or other shiny object was retrieved from defendant's car.
Defendant testified. He denied any contact with the victim. He claimed that he was on his way to help a friend move to a new residence when he was stopped.
On the first day of jury selection, defense counsel submitted a written list of questions to be asked of potential jurors regarding their racial attitudes and prejudices. The judge refused to ask any questions about race stating:
I asked if they could be fair and impartial jurors and that as fellow jurors, they would expect their other jurors to be fair and impartial. So, in fact, I have made eleven jurors the watchdog of the twelve.
The next day, the judge again denied defense counsel's request. He said:
This is not a question of black and white. This is a question of theft. That's what he has been indicted for. There is no reason to say to this jury anything about *418 black and white. This is the trial of a defendant who is accused by a grand jury of doing certain things.
....
... I will not bring that subject up.
Whenever there is a racial or ethnic difference between victim and accused, at defendant's request the trial judge should inquire of the prospective jurors as to whether the disparity will affect their ability to be impartial. Rosales-Lopez v. United States, 451 U.S. 182, 191, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22, 30 (1981); State v. Ramseur, 106 N.J. 123, 246, 524 A.2d 188 (1987); State v. Long, 137 N.J. Super. 124, 131, 348 A.2d 202 (App.Div. 1975), certif. denied, 70 N.J. 143, 358 A.2d 190 (1976).
Refusal to ask the potential jurors questions about racial attitudes is error of constitutional magnitude where racial issues are "inextricably bound up with the conduct of the trial," Ristaino v. Ross, 424 U.S. 589, 597, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258, 264 (1976), or where there exists "substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case." Rosales-Lopez, supra, 451 U.S. at 190, 101 S.Ct. at 1635, 68 L.Ed.2d at 29.
The refusal, even if not of constitutional dimension, is an abuse of discretion requiring reversal "where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury." Id. at 191, 101 S.Ct. at 1636, 68 L.Ed.2d at 30; Ramseur, supra, 106 N.J. at 244, 524 A.2d 188.
In Turner v. Murray, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), the United States Supreme Court upheld the Virginia murder conviction, but reversed the death sentence of an African-American male who shot and killed a Caucasian jewelry store owner. The four-member plurality held that "the mere fact that petitioner is black and his victim white does not constitute a `special circumstance' of constitutional proportions." Id. at 33, 106 S.Ct. at 1687, 90 L.Ed.2d at 35. The Court further held, however, that in a capital case a defendant accused of an interracial crime is *419 entitled to have prospective jurors informed of the victim's race and to be questioned about racial bias. Id. at 36-37, 106 S.Ct. at 1688-1689, 90 L.Ed.2d at 37. "[W]e find the risk that racial prejudice may have infected petitioner's capital sentencing unacceptable in light of the ease with which that risk could have been minimized." Id. at 36, 106 S.Ct. at 1688, 90 L.Ed.2d at 36.
One year before Turner, in State v. Anderson, 198 N.J. Super. 340, 352, 486 A.2d 1311 (App.Div.), certif. denied, 101 N.J. 283, 501 A.2d 946 (1985), we upheld the conviction of a dark-complected Jamaican for the robbery of a Caucasian store owner, concluding that the trial judge neither violated defendant's constitutional rights nor abused his discretion in refusing to question prospective jurors about potential prejudice because of the strong Jamaican accents of him and his codefendants. We concluded:
[T]he fact that defendant committed a violent crime against white victims in and of itself does not mean racial prejudice was "inextricably bound up with the conduct of the trial."
... [A]lthough the most desirable result would have been for the trial court to accede to defendant's request to question the jury, in the circumstances of this case we hold that its refusal to do so did not constitute a mistaken exercise of discretion.

[Id. 198 N.J. Super. at 356, 486 A.2d 1311.]
Anderson stands by itself. It has never been cited in any New Jersey case dealing with a voir dire where there is racial or ethnic disparity between the accused and the victim. Compare our earlier ruling in State v. Sims, 140 N.J. Super. 164, 355 A.2d 695 (App.Div. 1976), involving three African-Americans convicted of the attempted murder of two Caucasian police officers. We reversed, partly on other grounds, and ordered that if requested on retrial, the trial judge must ask the jurors about racial prejudice. Id. at 173, 355 A.2d 695.
The decisional law in this state has evolved since our holding in Anderson and the United States Supreme Court's ruling in Turner. Three recent decisions of the New Jersey Supreme Court, all involving defendants and victims of the same race, compel the conclusion that it is reversible error for the trial *420 judge to refuse a request to ask at least a threshold question about bias where there is racial disparity and defendant is charged with a crime of violence.
In Ramseur, the Supreme Court found no error where the trial judge limited the initial inquiry to whether race would have any influence upon the jurors' ability to reach a fair and impartial verdict, and permitted additional questions if a juror's answer required further exploration. 106 N.J. at 244, 524 A.2d 188. The Court held:
We are sensitive to the reality of racial prejudice, and to the possibility that jurors may prejudge a defendant because of his or her race, even in the absence of an interracial crime. Racial prejudice may operate, for instance, when the defendant is black simply because the defendant is black and regardless of the victim's color....
....
We are satisfied, however, that where the case itself carries no racial overtones, racial concerns are met by the approach followed by the trial court in the instant case although, where defendant so requests, we would prefer a broader range of inquiry. We reject the defendant's characterization of the allowed question as a "sledgehammer" inquiry. By allowing a general inquiry into whether racial views would affect impartiality, and by leaving open the possibility of further questioning if the initial answer warranted it, the trial court responded to the general problem of racially prejudiced jurors. Because the case itself carried no racial overtones, there was no abuse of discretion in so limiting the questioning; nor would there have been abuse in allowing more extensive questioning. Under the circumstances in this case, the trial court's approach cannot be said to have deprived defendant of his right to an impartial jury, even if a more searching inquiry is usually advisable when requested.

[Id. at 247-48, 524 A.2d 188 (emphasis added).]
In State v. Williams, 113 N.J. 393, 427, 550 A.2d 1172 (1988), the trial judge on voir dire limited inquiry of racial prejudice to one question: "Defendant was a black man. Would that, in any way, prejudice or influence your sitting as a juror in this case?" The Supreme Court held that the trial judge was required to seek clarification or explanation from jurors who gave ambiguous answers to the question. Ibid. The Court emphasized:
Although the issue of race was not "inextricably bound up with the conduct of the trial," ... the absence of racial overtones does not obviate the need to consider whether a more expansive voir dire should be conducted. See State v. Ramseur, *421 supra, 106 N.J. at 246, 524 A.2d 188. Racial prejudice may be either blatant and easy to detect or subtle and therefore more difficult to discern. A probing voir dire that elicits more than a "yes" or "no" response will aid the trial court in excusing prospective jurors for cause and will assist the defense in exercising its peremptory challenges. When the defendant is a member of a cognizable minority group, a more searching voir dire should be conducted, if requested.

[Id. at 427-28, 524 A.2d 188 (emphasis added).]
In State v. McDougald, 120 N.J. 523, 551, 577 A.2d 419 (1990), the Court held that the trial's integrity was not compromised where the judge asked only general questions as to impartiality but gave the defense counsel "free rein" to inquire into potential bias. The Court said:
This Court has also considered the extent to which a defendant is entitled to an inquiry into racial bias of the prospective jurors. Even in cases with no interracial crime or obvious racial overtones, this Court has stated that it prefers a searching inquiry into racial bias, if so requested by defendant.

... Our view of the voir dire process acknowledges the fact that jurors may be racially or ethnically biased against the defendant even in the absence of an explicitly racially divisive factual situation.... We have recommended that trial courts inquire into racial bias whenever defendant requests it, but have also recognized the broad discretion trial courts should have to determine the voir dire process in ambiguous situations.

[Id. at 553, 577 A.2d 419 (emphasis added).]
There is nothing ambiguous about the situation in this case. Defendant is an African-American. He was accused of the armed robbery of a smaller Caucasian female victim. Until the victim took the stand, the jury could not know that she and the defendant were of different races. The situation mandated at least an initial inquiry of the prospective jurors as to bias, followed by more extensive questioning, if required by a juror's answer. Although the trial judge was not required to ask the potential jurors all of the detailed questions requested by defense counsel, Ramseur, supra, 106 N.J. at 247-48, 524 A.2d 188, he was, however, required "to facilitate selection of an impartial jury through a voir dire designed to expose potential juror bias." State v. Lumumba, 253 N.J. Super. 375, 394, 601 A.2d 1178 (App.Div. 1992).
*422 We need not decide whether the refusal to inquire about jury bias was a violation of defendant's constitutional right to a fair trial by an impartial jury. N.J. Const. art. I, ¶ 10. See Lumumba, supra, 253 N.J. Super. at 394, 601 A.2d 1178; State v. Oates, 246 N.J. Super. 261, 269, 587 A.2d 298 (App.Div. 1991). At the very least, it was an abuse of discretion which requires reversal.
We also need not decide the other questions raised by defendant in this appeal.
Reversed and remanded for a new trial.
SHEBELL, J.A.D., concurring.
Although I concur in the result reached by the majority, I do not disagree with this court's prior holding in State v. Anderson, 198 N.J. Super. 340, 486 A.2d 1311 (App.Div.), certif. denied, 101 N.J. 283, 501 A.2d 946 (1985). Anderson is still good law. Our New Jersey Supreme Court has never required reversal for failure to ask a question regarding racial bias where the facts themselves do not give rise to some indication that there is a need for specific inquiry with respect to the racial views of the potential jurors. See State v. McDougald, 120 N.J. 523, 577 A.2d 419 (1990); State v. Ramseur, 106 N.J. 123, 524 A.2d 188 (1987).
Here, however, I have carefully scrutinized the entire jury voir dire and cannot conclude that any juror who might have a potential bias in a situation where there was a white victim and a black accused would have known that the racial disparity existed. The name of the victim and the circumstances of the crime were not mentioned to the jurors until most of them had been asked generally about their ability to judge the case fairly and impartially. Neither the name of the victim nor any of the details concerning her identity were mentioned in the beginning of the voir dire when counsel for the respective parties alerted the jurors to the names of persons who might be connected with the case or the attorneys. Thus, the observation of the majority that "[u]ntil the victim took the stand, the jury could not know that she and the defendant were of different races[]" is irrefutable. Without that *423 knowledge the general questions concerning the ability to be fair and impartial would have been ineffective in ferreting out any potential juror bias resulting from the victim being white and the accused being black. Therefore, I am constrained to join the majority in reversing defendant's conviction.