(No. 80753.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EDGAR HOPE, Appellant.

*Opinion filed October 29, 1998.*

MILLER and BILANDIC, JJ., concurring in part and dissenting in part.

Charles M. Schiedel, Deputy Defender, and Timothy M. Gabrielsen, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers and Arleen C. Anderson, Assistant Attorneys General, of Chicago, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

On November 15, 1994, defendant, Edgar Hope, pleaded guilty in the circuit court of Cook County to the murder of Chicago Police Officer James Doyle, the attempted murder of Chicago Police Officer Robert Mantia, and armed violence against Kevin Page and Cynthia Houston in connection with a shooting on a Chicago Transit Authority bus on February 5, 1982. The trial court accepted defendant's guilty pleas and entered findings of guilt on two counts of murder, one count of attempted murder and two counts of armed violence. Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 9—1(a)(1), (a)(2), 33A—2.

Defendant requested a jury for his capital sentencing hearing. The jury found defendant eligible for the death penalty based upon two statutory aggravating factors: (1) that defendant had murdered a peace officer in the course of performing his official duties (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(1)); and (2) that defendant had murdered

two or more individuals (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(3)). After considering the evidence in aggravation and mitigation, the jury found that there were no mitigating factors sufficient to preclude imposition of the death penalty. Accordingly, the trial court sentenced defendant to death. Defendant's death sentence has been stayed pending direct review by this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a).

This is the third appearance of this death penalty case before this court. See *People v. Hope*, 137 Ill. 2d 430 (1990); *People v. Hope*, 147 Ill. 2d 315 (1992). The facts of the case are essentially as set forth in *Hope*, 137 Ill. 2d at 441-42. In this appeal, defendant presents 11 issues contesting the sentence imposed. The issue dispositive of this appeal concerns the conduct of the *voir dire* proceedings at defendant's capital sentencing hearing, specifically, the trial court's refusal to question the venirepersons on the issue of interracial crime bias. We find the trial court's refusal to have been reversible error. Accordingly, we affirm defendant's convictions but vacate defendant's sentence of death and remand for a new sentencing hearing.

Defendant is an African-American and his murder victim, Officer Doyle, was white. On the start of the second day of *voir dire*, defense counsel requested the trial court to propound the following question to the venirepersons: "Would you automatically vote for the death penalty with respect to [defendant] because he is a Black man who has admittedly killed a White police officer?" The trial court ruled that such a question was impermissible because it would run counter to instructions that state racism is to play no role in the conduct of a criminal trial. Defense counsel renewed his request for the proposed *voir dire* question on the interracial nature of this murder at numerous junctures of jury selection. In addition to citing *Morgan v. Illinois*, 504 U.S. 719, 119 L.

Ed. 2d 492, 112 S. Ct. 2222 (1992), defense counsel explained that his request for a question on interracial crime bias was based on due process. Indeed, counsel so frequently repeated this request that, at one point, the trial court informed counsel that he need not state the question or his grounds for objection in depth because: "The Court rules as I have ruled under the previous 86, 85 jurors."

"[D]uring *voir dire*, the Constitution requires a trial judge to question venirepersons specifically regarding racial prejudice if 'special circumstances' exist that suggest a constitutionally significant likelihood that racial prejudice might infect a defendant's trial." *People v. Peeples*, 155 Ill. 2d 422, 459 (1993). Such special circumstances exist where racial issues are " 'inextricably bound up with the conduct of the trial.' " *Peeples*, 155 Ill. 2d at 459-60, quoting *Ristaino v. Ross*, 424 U.S. 589, 596-97, 47 L. Ed. 2d 258, 264, 96 S. Ct. 1017, 1021 (1976). In general, that the defendant and victim are of different races does not in itself constitute a special circumstance. *Peeples*, 155 Ill. 2d at 460. However, when a capital defendant is on trial for an interracial crime, the defendant is entitled at sentencing to have prospective jurors informed of the race of the victim and questioned about racial bias, but only if the defendant specifically requests such an inquiry. *Turner v. Murray*, 476 U.S. 28, 36-37, 90 L. Ed. 2d 27, 37, 106 S. Ct. 1683, 1688 (1986); *People v. Lear*, 175 Ill. 2d 262, 270 (1997).

In *Turner*, Justice White stated:

"Because of the range of discretion entrusted to a jury in a capital sentencing hearing, there is a unique opportunity for racial prejudice to operate but remain undetected. *** Fear of blacks, which could easily be stirred up by the violent facts of petitioner's crime, might incline a juror to favor the death penalty.

The risk of racial prejudice infecting a capital sentencing proceeding is especially serious in light of the complete

finality of the death sentence. \*\*\* By refusing to question prospective jurors on racial prejudice, the trial judge failed to adequately protect petitioner's constitutional right to an impartial jury.
    \*\*\*
    We hold that a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Turner*, 476 U.S. at 35-37, 90 L. Ed. 2d at 35-37, 106 S. Ct. at 1687-88.

After reviewing the record in the case at bar, we find that defendant has established that he was entitled to have the trial court question prospective jurors about interracial crime bias. At the time of defendant's capital sentencing hearing in 1995, both the United States Supreme Court, in *Turner*, and this court, in *Peeples*, 155 Ill. 2d at 460-61, had determined that such inquiry was constitutionally mandated when requested under the circumstances present herein. Trial courts are bound to follow case precedent, and for that reason we find that the trial court's failure to do so here was error as a matter of law. See *In re Dominique F.*, 204 Ill. App. 3d 271, 276 (1990), *aff'd*, 145 Ill. 2d 311 (1991); see also *People v. Gillespie*, 136 Ill. 2d 496, 502 (1990) (state courts are required to follow United States Supreme Court precedent where the result therein is mandated by the Constitution of the United States).

The State argues that defendant has waived this issue because he did not tender the question until eight prospective jurors, including two who were chosen to sit on the jury, had been *voir dired*. However, we agree with defendant that where the State failed to challenge the timeliness of defense counsel's proposed inquiry, it has waived the right to raise the issue on appeal. See *People v. Holloway*, 86 Ill. 2d 78, 91 (1981) (the principle that issues not raised in the trial court are generally waived on appeal applies to the State as well as to the defendant in a criminal case). The State's waiver of the issue aside, we

are unconvinced that any tardiness on the part of defense counsel precluded inquiry into potential interracial crime bias. Any inconvenience in making the inquiry of the two previously selected jurors would have been minor, considering its "minimally intrusive" nature and the trial court's discretion to question the jurors collectively. See *Turner*, 476 U.S. at 37, 90 L. Ed. 2d at 37, 106 S. Ct. at 1689.

Additionally, the State contends that waiver applies because defense counsel argued that the inquiry was mandated by *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), which does not require questioning on racial bias, rather than citing *Turner*. The State provides no support for its contention that defense counsel waived his client's constitutional right to a fair sentencing hearing by mistakenly citing a case not directly on point. It is required only that specific " 'issues' " be raised at trial and in a post-trial motion in order to give the trial court an opportunity to correct the error claimed. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988), quoting *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984).

The State alternatively contends that the *voir dire* conducted by the trial court sufficiently covered the area of racial bias and therefore ensured that defendant would receive a fair sentencing hearing. It is true that the trial court retains discretion as to the form and number of questions on the subject of interracial crime bias. *Turner*, 476 U.S. at 37, 90 L. Ed. 2d at 37, 106 S. Ct. at 1688-89. However, our review of the record herein shows that admonishments as to bias based on race, color, religion and natural origin were only given to two of the four venires from which defendant's jury was selected. Indeed, 7 of the 12 jurors who signed defendant's death verdict were never admonished that race or color should play no role in their determinations.

Further, the trial court failed to inform the venirepersons at any time during jury selection that the victim in this case was white. The State urges that the fact four veniremen admitted to being biased against defendant based on his race attests to the adequacy of the trial court's general admonitions to "discover racial bias." However, we agree with defendant that inquiring into bias against defendant based on his race is not the same as inquiring into interracial crime bias. There is a difference between racial prejudice, which depends in no way on the race of the victim, and interracial crime bias. Therefore, where venirepersons are without knowledge that the offense was interracial, the general questions concerning the ability to be fair and impartial are ineffective in ferreting out any potential juror bias resulting from the victim being white and the accused being African-American. See *State v. Horcey*, 266 N.J. Super. 415, 422, 629 A.2d 1367, 1371 (1993) (Shebell, J., concurring).

Here, as in *Turner*, "we find the risk that racial prejudice may have infected [defendant's] capital sentencing unacceptable in light of the ease with which that risk could have been minimized." *Turner*, 476 U.S. at 36, 90 L. Ed. 2d at 36, 106 S. Ct. at 1688. The inadequacy of *voir dire* in this case therefore requires that defendant's death sentence be vacated. See *Turner*, 476 U.S. at 37, 90 L. Ed. 2d at 37, 106 S. Ct. at 1689.

As noted, defendant raises other challenges to his capital sentencing hearing and to the constitutionality of the Illinois death penalty statute. Because we have concluded that defendant is entitled to a new sentencing hearing, we address one additional sentencing issue which is likely to recur on remand. See *People v. Mulero*, 176 Ill. 2d 444, 467 (1997).

Defendant contends that he was denied his right to a fair capital sentencing hearing where the State intro-

duced in aggravation victim impact evidence relating to an offense other than the one for which he was being sentenced. At the first, or eligibility, stage of the sentencing hearing, evidence was presented as to the circumstances of defendant's participation in, and conviction for, the January 11, 1982, murder of Lloyd Wyckliffe at a McDonald's restaurant. This evidence was presented, in part, through the testimony of Alvin Thompson, who was shot by defendant that night while working with Wyckliffe as a security guard at the restaurant. At the second phase of the sentencing hearing, the State presented evidence in aggravation of, *inter alia*, defendant's criminal background, his assault on one of his attorneys in court, and his misconduct in prison. Additionally, the State called Lloyd Wyckliffe's widow, Vernita Wyckliffe, and recalled Alvin Thompson to testify as to the effects of the McDonald's shooting on them and their families.

In *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991), the United States Supreme Court reconsidered its holdings in *Booth v. Maryland*, 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529 (1987), and *South Carolina v. Gathers*, 490 U.S. 805, 104 L. Ed. 2d 876, 109 S. Ct. 2207 (1989), that the eighth amendment bars the admission of victim impact evidence during the penalty phase of a capital trial. That same year, in *People v. Howard*, 147 Ill. 2d 103 (1991), this court addressed a defendant's challenge to certain victim impact evidence introduced at the second stage of his capital sentencing hearing.

Specifically, the defendant in *Howard* complained of victim impact testimony elicited from three State's witnesses in connection with three other, unrelated offenses committed by the defendant. In deciding this issue, the *Howard* court intentionally chose not to consider the defendant's "more limited" contention that the information introduced "did not relate to the impact of the of-

fense on the murder victim's survivors" (*Howard*, 147 Ill. 2d at 156), but went on to adopt the United States Supreme Court's holding in *Payne*, stating:

> "In *Payne* the Court declared that 'a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant.' (*Payne*, 501 U.S. at 825, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608.) We agree with the Court that such evidence is relevant to a consideration of the appropriate punishment for a capital defendant. Accordingly, we now choose to align ourselves with the Court rule on this subject." *Howard*, 147 Ill. 2d at 158.

However, Justice Freeman, in his special concurrence in *Howard*, disagreed with the majority's choice of that case as the vehicle to adopt *Payne*, precisely because the challenged victim impact statements, unlike those in *Payne*, involved statements of victims of the defendant's *other* crimes. *Howard*, 147 Ill. 2d at 172-73 ( Freeman, J., specially concurring). "I would advocate a more prudent approach on so important an issue. This court's reconsideration of the admissibility of *Payne*-type victim impact statements is better left to a future time and case." *Howard*, 147 Ill. 2d at 173 (Freeman, J., specially concurring). Indeed, only four months later, this court appeared to adopt the "more prudent approach" of Justice Freeman, stating: "While we acknowledge the shift brought about by *Payne*, it is not necessary for us to address every situation in which victim impact evidence might occur." *People v. Johnson*, 149 Ill. 2d 118, 153 (1992).

Shortly thereafter, in *People v. Mitchell*, 152 Ill. 2d 274 (1992), this court further cautioned that:

> "*Payne* does not give the prosecution a free rein to introduce and argue anything it wants. As the *Payne* Court warned: 'In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth

Amendment provides a mechanism for relief.' " *Mitchell*, 152 Ill. 2d at 338, quoting *Payne*, 501 U.S. at 825, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608.
We now feel compelled to consider that question left unanswered in *Howard*: whether the State's introduction of victim impact evidence which does not "relate to the impact of the offense on the murder victim's survivors" (*Howard*, 147 Ill. 2d at 156) is so unduly prejudicial that it renders the capital sentencing hearing fundamentally unfair.[1]

The Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/1 *et seq.* (West 1994)) "provides for the right of victims of violent crimes, including the relatives of a deceased, to address the court regarding the impact of the criminal conduct upon their lives." *Hope*, 147 Ill. 2d at 323. The statute further dictates that the court consider the victim impact statements, along with other appropriate factors, in determining the defendant's sentence. 725 ILCS 120/6(a) (West 1994); *Hope*, 147 Ill. 2d at 323. Accordingly, victim impact evidence relating to the effects of this crime on Officer Doyle's family is admissible in the penalty phase of defendant's capital sentencing hearing. See *Hope*, 147 Ill. 2d at 323-24. However, the statute does not contemplate, and we will not condone, an expansion of victim impact statements to include evidence from victims other than the victims of the offense on trial.

For purposes of the Act, the term "crime victim" means, *inter alia*, a single representative who may be the

---

[1]Although defendant does not include in his claim of error the victim impact testimony presented by Alvin Thompson, the attempted murder victim in the McDonald's shooting, our discussion applies to all victim impact evidence relating to crimes other than those for which a capital defendant is being sentenced. See *People v. Cortes*, 181 Ill. 2d 249, 282 (1998) (a reviewing court need not ignore grave errors of law which the parties on appeal either overlook or decline to address).

spouse, parent, child or sibling of a person killed as a result of a violent crime. 725 ILCS 120/3(a)(3) (West 1994). Section 6(a) of the Act states:

> "In any case where a defendant has been convicted of a violent crime *** and *a victim of the violent crime* is present in the courtroom at the time of *the sentencing* ***, the victim upon his or her request shall have the right to address the court regarding the impact which the defendant's criminal conduct *** has had upon the victim." (Emphasis added.) 725 ILCS 120/6(a) (West 1994).

It is thus clear from the plain language of the statute that the type of evidence admissible is restricted to the impact on the "victim of the violent crime" being sentenced. 725 ILCS 120/6(a) (West 1994).

Nor is there any language in *Payne* which would suggest that victim impact evidence stemming from a defendant's other, unrelated crimes is admissible at his capital sentencing. The Court in *Payne* reasoned, in part, as follows:

> "The Maryland statute involved in *Booth* required that the presentence report in all felony cases include a 'victim impact statement' which would describe the effect of *the crime on the victim and his family*. [Citation.] Congress and most of the States have, in recent years, enacted similar legislation to enable the sentencing authority to consider information about the harm caused by *the crime* committed by the defendant. The evidence involved in the present case was not admitted pursuant to any such enactment, but its purpose and effect were much the same as if it had been. While the admission of this particular kind of evidence—designed to portray for the sentencing authority the actual harm caused by *a particular crime*—is of recent origin, this fact hardly renders it unconstitutional. [Citations.]" (Emphasis added.) *Payne*, 501 U.S. at 821-22, 115 L. Ed. 2d at 733, 111 S. Ct. at 2606.

Indeed, the *Payne* court defined "[v]ictim impact evidence" as "simply another form or method of informing the sentencing authority about the specific harm caused by *the crime in question.*" (Emphasis added.) *Payne*, 501

U.S. at 825, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608. We therefore agree with defendant that *Payne* clearly contemplates that victim impact evidence will come only from a survivor of the murder for which the defendant is presently on trial, not from survivors of offenses collateral to the crime for which defendant is being tried. See *People v. Pasch*, 152 Ill. 2d 133, 200 (1992) (*Payne* holds "that the eighth amendment does not prohibit a jury from considering, at the sentencing phase of a capital trial, evidence relating to a victim's personal characteristics and the emotional impact of *the* murder on *the* victim's family" (emphasis added)).

The standard for admissibility of evidence at the second stage of a capital sentencing hearing is relevance and reliability, and that evaluation is left to the sound discretion of the trial judge. *People v. Hope*, 168 Ill. 2d 1, 41 (1995). Defendant does not contest the reliability of the victim impact evidence in question, and we have no doubt that the testimony given by Vernita Wyckliffe and Alvin Thompson was reliable, as they had firsthand knowledge of the effects of the McDonald's shooting on their families and they were available for cross-examination. See *People v. Brown*, 172 Ill. 2d 1, 50 (1996). However, the State contends that this victim impact evidence was relevant because it related to an offense constituting a statutory aggravating factor which the jury had found established defendant's eligibility for the death penalty. We disagree.

The finding of a statutory aggravating factor at the eligibility phase merely serves to limit the class of offenders for whom the death penalty may be imposed. *People v. Haynes*, 174 Ill. 2d 204, 250 (1996); *People v. Brown*, 169 Ill. 2d 132, 165 (1996). Further, this court has repeatedly recognized that the Illinois death penalty statute does not place special emphasis on any aggravating factor. *Brown*, 169 Ill. 2d at 164; *People v. Hampton*,

149 Ill. 2d 71, 90 (1992). Therefore, contrary to the State's contention, the jury's determination of the appropriateness of the death penalty for Officer Doyle's murder would not be assisted by the introduction of victim impact evidence concerning the unrelated murder of Lloyd Wyckliffe. Rather, the Constitution requires that consideration be given to "the character and record of the individual offender" and "the circumstances of *the particular offense*" before a determination is made that death is the appropriate sentence. (Emphasis added.) *Woodson v. North Carolina*, 428 U.S. 280, 304, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991 (1976); *People v. Ward*, 154 Ill. 2d 272, 340 (1992).

While the details of prior crimes are considered relevant aggravation because they illuminate the character and record of a capital defendant (see *People v. Edgeston*, 157 Ill. 2d 201, 235-37 (1993)), the unforeseen effects of those prior crimes on their victims are of no such assistance. Thus, evidence detailing defendant's participation in the prior McDonald's shooting was admissible at the second stage of his capital sentencing for Officer Doyle's murder, but victim impact statements regarding that offense are simply too attenuated to be relevant. *Cf. People v. Williams*, 161 Ill. 2d 1, 70 (1994) (while the testimony of witnesses concerning matters relating to the record and character of the defendant and the nature and circumstances of the offense are relevant to the decision to sentence a defendant to death, the opinions of witnesses regarding what sentence should be imposed are not relevant).

The State suggests, citing *Payne*, 501 U.S. at 825, 115 L. Ed. 2d at 735, 111 S. Ct. at 2608, that Vernita Wyckliffe's testimony would assist the jury in determining defendant's "moral culpability and blameworthiness" for her husband Lloyd's murder. However, what Mrs. Wyckliffe and her family have suffered due to their loss does

not make defendant more morally blameworthy in the murder of Officer Doyle. It is clear from a close reading of *Payne* that the Court was examining how the "harm caused by the defendant as a result of *the crime charged*" was relevant to a determination of the defendant's "blameworthiness" in a capital sentencing decision. (Emphasis added.) *Payne*, 501 U.S. at 819, 825, 115 L. Ed. 2d at 731, 735, 111 S. Ct. at 2605, 2608.

Thus, we conclude that while "evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed" (*Payne*, 501 U.S. at 827, 115 L. Ed. 2d at 736, 111 S. Ct. at 2609), evidence about victims of other, unrelated offenses is irrelevant and therefore inadmissible. See *People v. Harris*, 182 Ill. 2d 114, 156 (1998) (information that is irrelevant is inadmissible at a capital sentencing hearing). As defendant states: "The jury's highly subjective decision whether to impose death should be unfettered by emotionally-charged victim impact evidence that concerns something as collateral as a prior offense for which the defendant is not being sentenced."

"It is of vital importance to society and to the defendant that any decision to impose the death penalty is, and appears to be, based upon reason rather than emotion." *Williams*, 161 Ill. 2d at 77. We therefore find the improper admission of this irrelevant victim impact evidence deprived defendant of a fair capital sentencing hearing.

Accordingly, we affirm defendant's convictions but vacate defendant's death sentence and remand to the circuit court for a new capital sentencing hearing consistent with this opinion.

*Convictions affirmed;*
*death sentence vacated;*
*cause remanded.*

JUSTICE MILLER, concurring in part and dissenting in part:

I disagree with the majority's conclusion that the State may not, on remand, present victim impact evidence regarding crimes other than one for which this capital defendant is now being sentenced. Victim impact evidence relating to other crimes committed by a defendant can be relevant and reliable, and, just like evidence of the circumstances of the defendant's other crimes, it should be admissible in aggravation here.

The majority relies on two main grounds in support of its decision to exclude victim impact evidence concerning the defendant's other crimes. First, the majority believes that the Rights of Crime Victims and Witnesses Act (725 ILCS 120/1 through 9 (West 1994)) limits the range of admissible evidence to information relating to an offense on which the defendant is then being sentenced. 184 Ill. 2d at 49 ("However, the statute does not contemplate, and we will not condone, an expansion of victim impact statements to include evidence from victims other than the victims of the offense on trial"). In support of this holding the majority quotes section 6(a) of the Act, which provides:

> "In any case where a defendant has been convicted of a violent crime *** and a victim of the violent crime is present in the courtroom at the time of the sentencing ***, the victim upon his or her request shall have the right to address the court regarding the impact which the defendant's criminal conduct *** has had upon the victim." 725 ILCS 120/6(a) (West 1994).

From this provision the majority infers that victim impact evidence, to be admissible, must relate to the particular crime or crimes on which the defendant is being sentenced. The inference is flawed, however, for the majority seriously misapprehends the scope and purpose of the Rights of Crime Victims and Witnesses Act.

Contrary to the majority's interpretation, the Act is

not intended to alter or restrict the range of evidence that the State may introduce in aggravation; instead, the Act is designed to provide and enforce certain statutory and constitutional rights for victims and witnesses of violent crimes. 725 ILCS 120/2 (West 1994). The ability of the prosecution to present evidence in aggravation, whether in capital cases (720 ILCS 5/9—1(e) (West 1994)) or in noncapital cases (730 ILCS 5/5—4—1(a)(4) (West 1994)), remains distinct from the rights of victims and witnesses of violent crimes to have a role in sentencing hearings, as provided by the Rights of Crime Victims and Witnesses Act. See *People v. Willis*, 184 Ill. App. 3d 1033, 1045-46 (1989); *People v. Keyes*, 175 Ill. App. 3d 1013, 1017 (1988); *People v. Estrella*, 170 Ill. App. 3d 292, 295-96 (1988).

More specifically, section 6 of the Rights of Crime Victims and Witnesses Act, cited by the majority, applies when the victim, on his or her own initiative, wishes to address the sentencing court; section 6 does not purport to limit the evidence that the prosecution may otherwise introduce in aggravation. *People v. Pavlovskis*, 229 Ill. App. 3d 776, 782 (1992). The appellate court explained this distinction in *People v. Wallace*, 170 Ill. App. 3d 329 (1988). Rejecting a defendant's argument that a victim impact statement was improperly introduced into evidence because it was not presented through the testimony of the victim of the offense, the *Wallace* court stated:

> "Under defendant's interpretation, the legislature thus would have intended by adoption of the [Rights of Crime Victims and Witnesses Act] to make it more difficult for a victim's statement to be considered than was already possible. *** Clearly, the legislature did not intend to make sentencing more burdensome on those who have already suffered the traumatic effects of violent crime. In keeping with the name and purpose of the statute, we conclude that section 6 of the [Rights of Crime Victims and Witnesses Act] merely sets forth the absolute right of a victim to present an oral impact statement at sentencing if she so

desires. It does not impose a new requirement that a victim be present before a sentencing court can consider the impact on her as presented in the form of a written statement." *Wallace*, 170 Ill. App. 3d at 334.

Eluding the majority is the important distinction between the rights enforced by the Rights of Crime Victims and Witnesses Act and the prosecution's separate authority to introduce evidence in aggravation. The majority's interpretation turns the statute on its head and threatens to severely limit the prosecution's ability to present relevant, reliable evidence in aggravation: the majority transforms what was designed to provide a benefit to victims and witnesses into a shield for their offenders. The ironic and unfortunate result of today's decision, with its crabbed interpretation of the Act, is "to make sentencing more burdensome on those who have already suffered the traumatic effects of violent crime," an outcome the legislature could not have intended.

I would also note that the majority's reliance on section 6 of the Rights of Crime Victims and Witnesses Act raises a potential conflict with a companion provision, section 9 of the Act. Section 9 provides, in pertinent part, "Nothing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case." 725 ILCS 120/9 (West 1994). I recognize that the majority bases its vacatur of the defendant's death sentence on an unrelated ground, the failure of the trial judge to question prospective jurors about racial bias. To the extent that the majority would also find reversible error under the Rights of Crime Victims and Witnesses Act, however, that result would seemingly run contrary to the limitation expressed in section 9 of the Act.

As additional support for today's decision, the majority refers to the United States Supreme Court's opinion in *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991). In that case, however, the Court did not address the question raised in this appeal;

language from *Payne* cited by the majority in support of the present holding simply reflects the matters at issue in that case, and not the Court's views on whether victim impact evidence relating to other offenses may also be introduced. I do not believe that *Payne* forecloses introduction of the evidence challenged here. Just as evidence of the circumstances of a defendant's other offenses is admissible in aggravation, so too should be victim impact testimony from the victims of those other crimes.

JUSTICE BILANDIC, also concurring in part and dissenting in part:

I disagree with the majority's conclusion that the State may not, on remand, present the victim impact testimony of Alvin Thompson and Vernita Wyckliffe. For the reasons expressed by my colleague, Justice Miller, I believe that the State should not be precluded from ever introducing victim impact evidence which relates to a crime other than the one for which the defendant is being sentenced. I do not believe, however, that *all* victim impact evidence relating to other crimes should automatically be admissible. Rather, given the nature of this type of evidence, the trial court should exercise its discretion to allow this type of evidence sparingly, making sure that the evidence is not too attenuated to be relevant to the sentencing decision in the instant case. See *People v. Hope*, 168 Ill. 2d 1, 41 (1995) (evaluation of relevance and reliability is left to the sound discretion of the trial judge). In this case, the challenged victim impact evidence related to a murder and an attempted murder committed by defendant less than one month prior to his commission of murder and attempted murder in this case. Under these circumstances, I would hold that the trial court did not abuse its discretion in allowing the introduction of victim impact evidence relating to these crimes.