NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220037-U

NOS. 4-22-0037, 4-22-0038 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CHARLES SWIFT, | ) | Nos. 19CF1189 |
| Defendant-Appellant. | ) | 19CF1190 |
| | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The appellate court affirmed, holding that (1) the trial court's consideration of the testimony of two witnesses at the sentencing hearing did not constitute second-prong plain error, (2) the trial court did not err in finding serious harm to be an applicable aggravating factor in sentencing defendant, and (3) defense counsel complied with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 2   Defendant, Charles Swift, pled guilty to aggravated domestic battery and aggravated fleeing or attempting to elude a police officer in exchange for the State's agreement to dismiss additional charges. The trial court imposed concurrent sentences of 20 years' imprisonment and 3 years' imprisonment, respectively. Defendant appeals, arguing (1) the court considered improper aggravating factors at sentencing and (2) defense counsel's postplea motion

failed to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) because he failed to attach an affidavit concerning defendant's recent medical issues. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged in Winnebago County case No. 19-CF-1189 with two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a), (a-5) (West 2018)). Count I of the indictment alleged that, in committing a domestic battery, defendant knowingly strangled K.W. Count II alleged that, in committing a domestic battery, defendant knowingly caused great bodily harm to K.W. "in that [defendant] struck K.W. about the head and neck causing damage to her carotid artery." Defendant was also charged with domestic battery (*id.* § 12-3.2(a)(1)) and aggravated battery (*id.* § 12-3.05(c)).

¶ 5        Defendant was charged in Winnebago County case No. 19-CF-1190 with six counts of aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.l(a)(l), (a)(3), (a)(4) (West 2018)) and one count of aggravated driving while his driver's license was revoked (*id.* § 6-303(d-3)).

¶ 6        On March 30, 2021, defendant pled guilty to aggravated domestic battery as charged in count II of the indictment in Winnebago County case No. 19-CF-1189 and one count of aggravated fleeing or attempting to elude a police officer in Winnebago County case No. 19-CF-1190. In exchange, the State agreed to dismiss the remaining charges, but there was no agreement as to sentencing. As a factual basis for defendant's guilty plea to aggravated domestic battery, the prosecutor indicated the State's evidence would show that, on the night of the incident, defendant was in a parked vehicle with K.W., his former girlfriend. While inside the vehicle, defendant struck K.W. and applied pressure to her neck. Medical professionals would testify that K.W. sustained facial fractures and damage to her carotid arteries.

¶ 7　　　　　A presentence investigation report (PSI) was prepared. The PSI indicated defendant had seven prior convictions for domestic battery and three prior convictions for violating orders of protection. Defendant also had prior felony convictions for aggravated driving under the influence of alcohol, aggravated driving while his license was revoked, and forgery. Defendant reported he had consumed alcohol daily since he was 18 years old, and he used drugs regularly. Defendant had been involved in several substance abuse treatment and recovery programs while in jail. Defendant reported he suffered from "two discs in his spine that [were] crushed," asthma, hypertension, hepatitis C, schizoaffective disorder, bipolar disorder, and anxiety.

¶ 8　　　　　A sentencing hearing was held on May 25, 2021. A doctor who treated K.W.'s injuries testified K.W. suffered bilateral carotid artery dissections resulting in pseudoaneurysms, which meant K.W.'s carotid arteries had been damaged such that there was blood pooling in the arterial walls. The doctor opined that the cause of these injuries was strangulation, and he stated he had to place stents in both dissections.

¶ 9　　　　　Jodi Dandridge, defendant's ex-wife, testified she began her relationship with defendant in approximately 1991. On one occasion in 1992, defendant punched, choked, and strangled Dandridge. She passed out and woke up to her daughter, who was two or three years old, calling for her. On other occasions during the course of their relationship, defendant threw a brick through Dandridge's window while she was sleeping, punched her in the face, choked her until she passed out, and sexually assaulted her. The police were routinely called to her house due to these incidents. The Department of Children and Family Services (DCFS) removed Dandridge's children from her care due to the domestic violence in her relationship with defendant. Dandridge married defendant in 1995 or 1996 because a DCFS worker told her it

would help her get her children back. The court asked if defendant was ever prosecuted for the conduct Dandridge described, and Dandridge stated he was not prosecuted because she always asked to have the charges dropped. She obtained orders of protection against defendant on multiple occasions, but she "wouldn't go through [with] them."

¶ 10      Maria Torrison, Dandridge's daughter, testified she remembered her mother having a relationship with defendant until Torrison was approximately five years old. Torrison was placed in foster care when she was four or five years old and was adopted when she was nine years old. She reconnected with Dandridge when she became an adult. After Torrison turned 18 years old, defendant contacted her on Facebook, telling her he loved her and mentioning personal information about her. This made Torrison feel scared, threatened, and confused. The trial court asked Torrison if defendant had abused her as a child. Torrison stated defendant never abused her, but she was afraid of him as a child because her mother was afraid of him. The court also questioned Torrison about how long she was in foster care and when she reunited with Dandridge.

¶ 11      The trial court admitted into evidence certified copies of several of defendant's prior convictions, a petition for an order of protection K.W. had filed against defendant prior to the subject incident, and nine other petitions for orders of protection against defendant filed between 1996 and 2011 by seven different petitioners. The court also admitted arrest reports concerning two prior instances in which defendant grabbed women by the neck or choked them and one instance where defendant sexually assaulted a woman.

¶ 12      Defendant called his sister, Cynthia Baxter, as a witness. Baxter testified that her father abused defendant when he was a child, and defendant became an alcoholic as an adult. Baxter had been estranged from defendant for approximately 15 years, but she began having

- 4 -

contact with him again approximately 9 months prior to the sentencing hearing. During her recent interactions with defendant, he acted how he used to when he was younger and sober.

¶ 13        Defendant made a statement in allocution in which he stated he was sorry for the pain he had caused over the years. He stated he signed up for every class he could in jail because he wanted to be a different person. The trial court took the matter under advisement.

¶ 14        At a hearing on June 1, 2021, the trial court imposed concurrent sentences of 20 years' imprisonment for aggravated domestic battery and 3 years' imprisonment for aggravated fleeing or attempting to elude a police officer. The court stated it had considered the factual basis for the plea; the PSI; the history, character, and attitude of defendant; the evidence; the arguments of the parties; the statement in allocution; and the statutory factors in aggravation and mitigation. The court noted defendant had a long history of violence against women and that Dandridge reported defendant had choked and sexually assaulted her. The court found, in aggravation, that defendant had caused serious harm to K.W. The court stated: "Strangling in and of itself is inherent in the offense of aggravated domestic battery as it is charged, but when you're also talking about facial fractures, there's more that happened here, and so I believe that I can consider that particular factor in aggravation." The court also found defendant's criminal history to be a factor in aggravation.

¶ 15        On June 25, 2021, defendant filed a motion to reconsider sentence. In his motion, defendant argued, *inter alia*, that the sentence was excessive in light of his "recent history and character." Defendant also argued the court gave too little weight to his age and life expectancy relative to the sentence, his history of mental health problems, and his history of substance abuse and alcohol abuse.

¶ 16         On December 14, 2021, the trial court held a hearing on the motion to reconsider sentence. Defense counsel stated he had filed a Rule 604(d) certificate, and defendant confirmed that all the issues he wanted raised in the motion to reconsider sentence had been raised.

¶ 17         Defense counsel argued the trial court should have given greater weight to defendant's age, as defendant was over 50 years old at the time of sentencing. Counsel also argued the court should have given greater weight to defendant's health concerns that were documented in the PSI, including his hypertension, back problems, asthma, and mental health issues. Counsel noted he had argued in the motion that defendant's sentence was excessive in light of his "recent history," which counsel indicated referred to the fact that defendant "reached that point in his life where he really was changing his direction, that he viewed this opportunity to be a better person, a person who lives lawfully and lives peacefully."

¶ 18         Defendant informed the court he had suffered a heart attack two months before the hearing and had been diagnosed with an aneurysm. While he was being treated, medical professionals also found a cancerous mass on one of his lungs. Defendant stated, "So I know that has nothing to do with what's going on here today, but *** I don't feel that I am going to be able to make 20 years."

¶ 19         The trial court denied the motion to reconsider sentence. The court stated it believed the sentence was appropriate based on the nature of the offense, defendant's criminal history, and the factors in aggravation it discussed at the sentencing hearing. The court acknowledged defendant might not survive the sentence based on defendant's description of his recent health issues, but the court stated that it would not give him a "pass" just because he was getting older. This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21    On appeal, defendant argues (1) the court erred in considering improper aggravating factors at sentencing and (2) defense counsel's postplea motion failed to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) because he failed to attach an affidavit concerning defendant's recent medical issues.

¶ 22                    A. Improper Aggravating Factors

¶ 23    First, defendant argues the trial court considered improper factors in aggravation. Specifically, defendant contends that the trial court erred in (1) considering Dandridge's and Torrison's testimony concerning conduct that occurred 30 years earlier and its impact on their lives and (2) finding in aggravation that K.W. suffered serious harm based on her facial fractures when that harm was inherent in the charged offense.

¶ 24    Defendant acknowledges he failed to preserve this issue for appeal by failing to raise either of these alleged errors at the sentencing hearing or in the motion to reconsider sentence. However, he contends we may review these unpreserved errors under the second prong of the plain error doctrine. To obtain relief under the plain error doctrine, "a defendant must first show that a clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.*

¶ 25                    1. *Dandridge's and Torrison's Testimony*

¶ 26    Defendant argues the trial court erred in considering Dandridge's and Torrison's testimony because it concerned conduct that occurred 30 years prior to the sentencing hearing, did not result in a conviction, and was unrelated to the charged offense. Defendant also contends the testimony improperly focused on the impact his conduct had on Dandridge and Torrison,

which was irrelevant to the sentencing determination for the current offense. Defendant argues the court's questions to Dandridge and Torrison and the court's comments when it pronounced its sentence showed that it considered this alleged improper evidence in fashioning its sentence.

¶ 27 "[C]riminal conduct for which there has been no prosecution or conviction may be considered in sentencing." *People v. Jackson*, 149 Ill. 2d 540, 548 (1992). This evidence should be presented by witnesses who may be confronted and cross-examined, and the defendant should have an opportunity to rebut the evidence. *Id.* Such evidence is admissible if it is relevant and reliable. *People v. Thomas*, 137 Ill. 2d 500, 547 (1990). However, while the details of prior crimes are relevant evidence in aggravation, victim impact evidence concerning the victims of prior offenses is "too attenuated to be relevant." *People v. Hope*, 184 Ill. 2d 39, 52 (1998). See also *People v. Raney*, 2014 IL App (4th) 130551, ¶ 45 (holding it was error for a victim impact statement to be submitted with a PSI concerning conduct for which the defendant was not charged).

¶ 28 We find the trial court did not err in considering Dandridge's and Torrison's testimony insofar as it concerned defendant's past acts of violence against Dandridge. This evidence was proper even though the conduct involved did not result in a conviction, as the testimony concerned defendant's past criminal conduct, was relevant evidence concerning his character and criminal history, was reliable, and was subject to cross-examination. See *Jackson*, 149 Ill. 2d at 548; *Thomas*, 137 Ill. 2d at 547.

¶ 29 Defendant further points out that some of the Dandridge's and Torrison's testimony focused on the impact his conduct had on their lives rather than the conduct itself. We agree with defendant that this testimony was arguably irrelevant to his sentencing. However, even accepting defendant's argument that this evidence was improperly considered by the trial

court, the admission of this testimony was not an error "so egregious as to deny the defendant a fair sentencing hearing" (*Hillier*, 237 Ill. 2d at 545) under the second prong of the plain error doctrine. The court gave no indication that it considered the effect of defendant's conduct on Dandridge's and Torrison's lives when it pronounced its sentence. First, as to Dandridge, the court focused on defendant's acts of violence without mentioning the results or impact these acts had on Dandridge's life. The court's questions to Dandridge during her testimony concerned whether defendant had been prosecuted for his violent conduct, not the effect the conduct had on her life. Regarding Torrison, while some of the court's questions concerned how her life was affected by defendant's actions, the court did not mention her testimony when it pronounced its sentence. Rather, the court indicated the sentence was based on defendant's criminal record, long history of domestic violence, and the nature of the offense.

¶ 30                                    2. *Harm Inherent in the Offense*

¶ 31        Defendant argues the trial court improperly relied on serious harm as a factor in aggravation based on the facial fractures K.W. sustained. Defendant contends the court appeared to believe he had pled guilty to aggravated domestic battery as charged in count I of the indictment, which alleged he strangled K.W. However, defendant argues, he actually pled guilty to aggravated domestic battery as charged in count II, which alleged he caused great bodily harm to K.W. Defendant contends that, because great bodily harm was a factor inherent in the offense charged in count II, it was improper for the trial court to consider in aggravation that he caused serious harm to K.W.

¶ 32        "[A]n element that is inherent to the criminal offense of which a defendant has been convicted cannot be used also to extend the prison sentence on the conviction." *People v. Gilliam*, 172 Ill. 2d 484, 521 (1996). This rule "is based on the assumption that, in designating

the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *People v. Phelps*, 211 Ill. 2d 1, 12 (2004).

¶ 33        Pursuant to section 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.2 (West 2020)), a trial court may consider the fact that a defendant's conduct "caused or threatened serious harm" to be a factor in aggravation. When considering whether this factor applies, "the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 67. "Anything and everything beyond the minimum conduct necessary for the defendant to be found to have engaged in criminal behavior is entirely appropriate for a sentencing court to consider." *Id.* ¶ 71. See also *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986).

¶ 34        In the instant case, the trial court did not err in finding in aggravation that defendant's conduct caused serious harm to K.W. While defendant pled guilty to one count of aggravated domestic battery in that he caused great bodily harm to K.W., that same count explicitly alleged K.W. suffered great bodily harm "in that the defendant struck [her] about the head and neck causing damage to her carotid artery." The trial court's finding that serious harm was an applicable aggravating factor was based on the fact that defendant's conduct also caused fractures to K.W.'s face. This additional conduct went beyond the minimum conduct required to prove defendant caused great bodily harm as charged in the indictment. Because the fact that defendant caused facial fractures to K.W. was not inherent in the offense as charged, the court properly considered it in aggravation.

¶ 35        As no error occurred when the trial court found in aggravation that defendant's conduct caused serious harm to K.W., defendant cannot establish second-prong plain error with regard to this claim. See *People v. Bannister*, 232 Ill. 2d 52, 71 (2008).

¶ 36                              B. Compliance with Rule 604(d)

¶ 37        Defendant lastly argues that, despite defense counsel's facially compliant Rule

604(d) certificate, the record shows counsel failed to comply with the requirements of Rule

604(d) because he did not support his motion to reconsider sentence with an affidavit concerning

the recent medical issues defendant discussed at the hearing on the motion. Rule 604(d) provides,

in relevant part:

> "No appeal from a judgment entered upon a plea of guilty shall be
>
> taken unless the defendant, within 30 days of the date on which sentence is
>
> imposed, files in the trial court a motion to reconsider the sentence, if only the
>
> sentence is being challenged, or, if the plea is being challenged, a motion to
>
> withdraw the plea of guilty and vacate the judgment.
>
>        ***
>
> The motion shall be in writing and shall state the grounds therefor. When
>
> the motion is based on facts that do not appear of record it shall be supported by
>
> affidavit ***." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 38        Rule 604(d) also requires defense counsel to file a certificate stating that he or she

has (1) consulted with the defendant concerning his contentions of error in the sentence and the

guilty pleas; (2) examined the trial court file, the report of proceedings of the guilty plea, and the

report of proceedings of the sentencing hearing; and (3) "made any amendments to the motion

necessary for adequate presentation of any defects in those proceedings." *Id.* Our supreme court

has held that "counsel must strictly comply with 'each of the provisions of Rule 604(d)' and that

the failure to do so requires 'a remand to the circuit court for the filing of a new motion to

withdraw guilty plea or to reconsider sentence and a new hearing on the motion.' " *People v.*

*Gorss*, 2022 IL 126464, ¶ 19 (quoting *People v. Janes*, 158 Ill. 2d 27, 33 (1994)). We review *de novo* the question of whether counsel complied with Rule 604(d). *Id*. ¶ 10.

¶ 39    In the instant case, defense counsel did not fail to comply with Rule 604(d) by failing to attach an affidavit to the motion concerning defendant's recent health issues. Rule 604(d) provides that an affidavit is required "[w]hen *the motion* is based on facts that do not appear of record." (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Here, there were no allegations in the motion about defendant's recent health problems. While the motion alleged the court had given too little weight to defendant's age and his life expectancy relative to the sentence, we do not construe this general allegation as a reference to defendant's recent health issues. Notably, during the hearing on the motion to reconsider sentence, counsel's argument on this point referred only to the health problems documented in the PSI. Also, contrary to defendant's argument on appeal, the record shows the allegation in the motion concerning his "recent history" referred to the positive changes he had made in his life while incarcerated awaiting trial, not his recent health issues.

¶ 40    While defendant discussed his recent health issues at the hearing on his motion to reconsider sentence, his medical condition was not raised in the motion to reconsider sentence. Also, there is no indication in the record that defendant wanted a claim concerning his recent health problems included in the motion, as he indicated at the outset of the hearing that the motion contained all the issues he wanted raised. We also note that, despite the absence of an affidavit, the trial court considered defendant's comments concerning his recent health problems and expressly indicated it believed the original sentence was appropriate even in light of defendant's recent health issues.

¶ 41                    III. CONCLUSION

¶ 42    For the reasons stated, we affirm the trial court's judgment.

¶ 43    Affirmed.